IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs. : | CRIMINAL NO. 08-280 |
| : | |
| MAURICE RAY DUPREE, : | |
|        Defendant. : | |

**MEMORANDUM AND ORDER**

**RUFE, J.**                                                                                              **August 4, 2009**

## I. INTRODUCTION

The Indictment in the above-captioned case charges Defendant Maurice Dupree ("Defendant" or "Dupree") with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Defendant filed a Motion to Suppress all physical evidence recovered in connection with his arrest, and in particular, the firearm at issue in the charged offense.[1] After considering Defendant's Motion and the Government's Response in opposition,[2] and after an evidentiary hearing and oral argument held on the same,[3] the Court made findings of fact and conclusions of law and granted Defendant's Motion in a Memorandum and Order filed May 27, 2009.[4] Presently before the Court is the Government's Motion for Reconsideration of that ruling,[5]

---

[1] Doc. No. 25.

[2] Doc. No. 28.

[3] See Doc. No. 33 (Transcript of suppression hearing held on February 2, 2009 ("Tr.")).

[4] Doc. No. 36.

[5] Doc. No. 37.

1

and Defendant's Response in Opposition.[6]  The matter is ready for disposition.

## II.  LEGAL STANDARD

Motions for reconsideration of a final judgment or interlocutory order are provided for in Local Rule of Civil Procedure 7.1(g),[7] which, in turn, is made "fully applicable in all criminal proceedings" in this District by Local Rule of Criminal Procedure 1.2.[8]  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."[9]  Thus, to prevail on such a motion, its proponent must show "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [rendered the challenged decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[10]  The Government bases its motion on the final ground alone, arguing that the decision in question rested on a clear error of law.

## III.  DISCUSSION

The Court incorporates and presumes familiarity with the Findings of Fact it made in the Memorandum and Order of May 27, 2009.  The Court recites only those facts necessary for an understanding of this decision.

On January 16, 2008, responding to a vague physical description of a suspect

---

[6] Doc. No. 42.

[7] Local R. Civ. P. 7.1(g) (2009).  Rule 7.1(g) provides, "[m]otions for reconsideration . . . shall be served and filed within ten (10) days after the entry of the judgment, order, or decree concerned."

[8] Local R. Crim. P. 1.2 (2009).  Local Criminal Rule1.2 provides, "[t]he following Local Civil Rules shall be fully applicable in all criminal proceedings: . . . Rule 7.1(g), Motions for Reconsideration or Reargument . . . ."  See, e.g., United States v. Croce, 355 F. Supp. 2d 774, 775 (E.D. Pa. 2005) (ruling on motion to reconsider in criminal case); United States v. Rich, 343 F. Supp. 2d 411, 414 (E.D. Pa. 2004) (same).

[9] Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

[10] Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

broadcast in a flash radio communication, Philadelphia Police Officers Brian Mabry ("Mabry") and Steven Shippen ("Shippen") determined to approach Defendant, Maurice Ray Dupree ("Dupree"), whom they observed riding a bicycle approximately seven blocks away from the location described in the flash report. Shippen drove the officers' patrol car to a position alongside Dupree, and stopped. Mabry immediately exited the car and approached Dupree, who was still riding the bicycle. Quickly drawing alongside Dupree, and without first speaking, Mabry grabbed Dupree with both hands, one hand holding Dupree's right elbow, the other gripping Dupree's right upper arm. While gripping Dupree's arm, Mabry said "Can I talk to you for a minute?" Dupree was still astride the bicycle. Shippen had emerged from the patrol car and approached Dupree as well. By grabbing him, Mabry stopped Dupree's movement. Mabry testified that, "at that point he was stopped for investigation."[11] To that point in time, the officers had not observed Dupree with a weapon, and they had not observed him engaging in any sort of criminal activity. Mabry held and stopped Dupree for approximately two seconds before Dupree twisted away from Mabry, breaking Mabry's grip on him, and jumped off the bicycle, sliding it into Mabry's legs. Dupree ran eastbound then southbound through the area, away from the officers, who chased him and arrested him shortly thereafter. During the chase, the officers witnessed Dupree drop the firearm at issue in this case.

As noted, the Government does not challenge these findings. On the basis of these findings, the Court ruled that Dupree was "seized" for purposes of the Fourth Amendment when Officer Mabry grabbed him by the arm with both hands, stopping his movement, albeit for approximately two seconds. The Court further ruled that the flash report's description of the suspect was too vague to provide a proper basis to stop or seize Dupree for investigative purposes, and that

---

[11] Tr. at 42:1.

no other proper basis for such a stop existed, such that the seizure was not justified. Ruling that the illegal seizure led directly to Dupree's flight and discarding of the firearm in question, the Court suppressed the firearm under the "fruit of the poisonous tree" and "forced abandonment" doctrines.[12]

In the instant Motion, the Government acknowledges that at the moment Mabry grabbed him, "the police had an insufficient basis to stop and frisk Dupree, and that any seizure of his person or possessions at that time would be unlawful."[13] The Government contends, however, that it was a clear error of law for the Court to rule that Dupree was seized when Mabry grabbed him. The Government urges the Court to vacate the challenged order and enter an order denying Dupree's Motion to Suppress Physical Evidence.

In determining that Dupree was seized when Mabry grabbed him, the Court relied on the case law of the Third Circuit Court of Appeals. In particular, in the case United States v. Brown, the Third Circuit explained that a "seizure" occurs for Fourth Amendment purposes when there is "either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to a 'show of authority.'"[14] "Put another way," the Brown court added, "when a seizure is effected by even 'the slightest application of physical force,' it is immaterial whether the suspect yields to that force."[15] In the passages of Brown just noted, the Court of Appeals expressly interpreted and relied upon the decision of the United States Supreme

---

[12] See United States v. Coggins, 986 F.2d 651, 653 (3d Cir. 1993) (citing Wong Sun v. United States, 371 U.S. 471 (1963)); see also United States v. Wilson, 953 F.2d 116, 127 (4th Cir. 1991) (same); United States v. Beck, 602 F.2d 726 (5th Cir. 1979) (same).

[13] Mot. Reconsider, at 6.

[14] United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)).

[15] Brown, 448 F.3d at 245 (quoting Hodari D., 499 U.S. at 625-26).

4

Court in California v. Hodari D.[16] In Hodari D., a case involving not physical force but a show of authority prior to a citizen's flight from police, "the Court held that a seizure does *not* occur when the subject does not yield to a show of authority."[17]

Yet, the Government argues the Court should disregard as irrelevant dictum the language from Brown explicitly defining "seizure," quoted above, and should instead embrace and apply a contrary interpretation of Hodari D. adopted by federal courts in other circuits.[18] For example, two cases cited by the Government show that different federal courts of appeals have read Hodari D. to stand for the proposition that it is not a seizure for Fourth Amendment purposes "if an officer applies physical force in an attempt to detain a suspect but such force is ineffective."[19]

The Government seeks to relegate the Brown language noted previously to the status of mere dictum, not binding on this Court. It notes, accurately, that Brown was a case involving a putative seizure resulting not from physical contact between police and a citizen, but from a show of police authority. As a result, the Government contends that Brown is inapposite and not useful as a source of law for district courts considering cases involving issues of seizure through physical force, such as this one. But the Government's dictum argument cuts both ways, of course, as the putative seizure in Hodari D. involved a show of police authority, and not physical force, as well.

---

[16] See Brown, 448 F.3d at 245 (quoting Hodari D., 499 U.S. at 625-26).

[17] United States v. Smith, — F.3d —, 2009 WL 2257456, at *3 (3d Cir. 2009) (emphasis in original).

[18] For example, the Government forwards the case United States v. Bradley from the Court of Appeals for the Seventh Circuit, in which that court the articulated following understanding of Hodari D.: "a seizure is the sum of two parts. First, there must be either a show of authority or a use of force; and second, the show of authority or use of force must have caused the fleeing individual to stop attempting to escape. If these two elements are both present, a seizure has been effected." 196 F.3d 762, 768 (7th Cir. 1999).

[19] United States v. Hernandez, 27 F.3d 1403, 1407 (9th Cir. 1994) (citing Hodari D., 499 U.S. at 625); see also Bradley, 196 F.3d at 768. It is perhaps not surprising that the Government prefers the interpretation of Hodari D. that these courts apply to the one articulated by the Third Circuit in Brown.

5

While it is true that Brown did not involve a question of seizure through the application of physical force by police, this Court nonetheless does not consider itself free to disregard the clear definition of "seizure" that Brown provides, including as to circumstances of seizure through physical force, and to adopt and apply instead the nearly opposite understanding, as relevant here, espoused in other circuits. In the present, rather limited, inquiry, the Court refrains from engaging in an exhaustive comparison and analysis of the cases presented by the Government and Defendant, respectively, in support of their positions. Suffice it to say that the cases marshaled by the parties on the issue evince less that the earlier-noted language from Brown was errant dictum by the Third Circuit, and more that discord exists in the federal courts over this significant question of Fourth Amendment law.[20]

However, the Court's current purpose is to ascertain whether it committed clear legal error. The Court remains convinced that Brown means what it says, and that it provides the operative definition of "seizure," whether through application of force or show of authority, that this Court must apply.[21] The Court recognizes that the facts of this case, involving a police officer's brief and unsuccessful grasp of a citizen's arm, may place this matter near the outer limits of the rule articulated in Brown. Yet by its reference to the "slightest application of physical force," the definition of seizure in Brown seems to announce a standard which encompasses even these facts.

---

[20] Compare Hernandez, 27 F.3d at 1407 (seizure not effectuated through temporary, unsuccessful application of force by police); Bradley, 196 F.3d at 768 (same) with Brown, 448 F.3d at 245; Cole v. Bone, 993 F.2d 1328, 1332 (8th Cir. 1993) (en banc) (seizure occurs when police apply physical force to citizen, whether or not citizen yields to such force). The Court notes that Brown was decided in 2006, several years after the other circuit court opinions forwarded by the parties on the issue and noted herein. It is not unreasonable to consider that the Third Circuit was cognizant of the positions on the question adopted in other circuits at the time it decided Brown.

[21] The ongoing vitality of Brown is not disputed. See United States v. Smith, — F.3d —, 2009 WL 2257456, at *5 (3d Cir. 2009).

6

As such, the Government's argument with respect to clear legal error is rejected.[22]

An appropriate Order follows.

---

[22] The Court also rejects the Government's alternative argument that even if Dupree was seized illegally by Mabry in the first instance, the fact that he committed an "aggravated assault" by sliding his bicycle into Officer Mabry when fleeing gave the officers a new, independent and appropriate basis for chasing him, rendering the abandonment of the firearm voluntary, and the firearm admissible. There is scant evidence that Dupree committed the offense of aggravated assault on the evening in question. It does not appear that he was charged with that crime. This argument was not raised when Dupree's suppression motion was briefed and argued previously. Moreover, and more importantly, the Government has presented no case from this circuit that supports its position on this matter. In these circumstances, the Court declines to rule that it was a clear error of law when it did not find that Dupree committed aggravated assault against Mabry, rendering the firearm admissible.